United States District Court
Southern District of Texas
**ENTERED**
February 09, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DOLORES E. VALDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:21-cv-00367 |
| | § | |
| CITY OF MCALLEN, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## ORDER AND OPINION

The Court now considers Defendant's motion for summary judgment,[1] Plaintiff's response,[2] and Defendant's reply.[3] After duly considering the record and relevant authorities, the Court **GRANTS** the motion for summary judgment.

### I.   BACKGROUND

This case arises from the termination of Plaintiff Dolores Valdez's 20-year employment with Defendant City of McAllen.[4] The summary judgment evidence indicates that from nearly the beginning of her employment, Plaintiff's attendance record was unsatisfactory to Defendant. From 2001 to 2006, she used 238 hours of leave without pay in addition to leave in other categories.[5]

In 2008, Plaintiff requested a transfer to a technical services position and Defendant approved it, hoping that the more consistent schedule accompanying that role would help

---

[1] Dkt. No. 11.
[2] Dkt. No. 15.
[3] Dkt. No. 17.
[4] *See* Dkt. No. 11-2.
[5] Dkt. No. 11-9.

Plaintiff's attendance.[6] That change was successful for a few years.[7] But by 2015 Defendant again had to tweak Plaintiff's schedule to accommodate her tardiness, including delaying her start time and shortening her lunch.[8] By 2016 Plaintiff's absenteeism was back up and she clocked 308 hours of leave without pay in addition to over 200 hours of regular leave.[9] Defendant made further schedule adjustments to allow Plaintiff to build accruals and advised her that calling in just before a shift (as opposed to requesting leave without pay in advance) was not acceptable.[10]

But things did not get better. In 2017, Plaintiff had 255 hours of leave without pay, totaling nearly 600 hours of leave in all categories combined.[11] In 2018, Defendant's management had to meet with Plaintiff to counsel her on managing her personal life to improve attendance[12] and to review the rules for use of leave under the Family and Medical Leave Act (FMLA).[13] High absenteeism continued until the events giving rise to her termination.

The summer of 2019 marked the beginning of Plaintiff's annual FMLA leave period, which ran July 3, 2019 to July 3, 2020.[14] Plaintiff's deposition testimony states that around this same time, she began consultation for a bariatric surgery.[15] This included consulting her primary care physician, her rheumatologist, her gastrologist, and her cardiologist.[16] It required an EEG and other tests to be run before the surgery scheduled for February 12, 2020.[17] However, it was not until

---

[6] Dkt. Nos. 11-3, 11-12.
[7] *See* Dkt. Nos. 11-10, 11-11.
[8] Dkt. No. 11-12.
[9] Dkt. No. 11-13.
[10] Dkt. No. 11-12.
[11] Dkt. No. 11-15.
[12] Dkt. No. 11-16.
[13] Dkt. No. 11-17.
[14] See Dkt. No.
[15] *See* Dkt. No. 11-42 at 77-78 (stating that she began consultation six to nine months before surgery).
[16] *Id.*
[17] *Id.*

February 5, 2020 that Plaintiff informed her managers about the surgery,[18] and she did not complete and turn in the required FMLA form (which was explained to her personally in 2018) until the day of surgery.[19] The form includes—as the very first acknowledgement of understanding—that a requirement for FMLA leave for scheduled medical care is 30-day advance notice.[20] On top of this inadequate notice, Plaintiff had just 17 of her total 250.75 hours of FMLA leave remaining when she made the request.[21] One of the medical facility's letter to Defendant stated that Plaintiff would be out of work for approximately 4 weeks and the other did not include a recovery time.[22] Neither were received by Defendant until after the day of surgery.[23]

On February 27, 2020, Defendant called Plaintiff to inform her that her application for FMLA leave was not approved because she had exhausted her available hours.[24] Unfortunately, Plaintiff experienced serious complications from her surgery.[25] On March 18, 2020, Plaintiff's husband emailed Defendant to request additional leave until at least March 27, when she had her next follow up appointment.[26] The same day, Defendant mailed out termination of employment letters to Plaintiff.[27]

Plaintiff then took legal action in response to her termination. Prior to filing this action, Plaintiff filed complaints with the Texas Workforce Commission and the Equal Opportunity Employment Commission and received notice of the right to file a civil action from both

---

[18] *Id.*
[19] Dkt. No. 11-29.
[20] *Id.*
[21] Dkt. Nos. 11-25, 11-33.
[22] Dkt. Nos. 11-30, 11-31.
[23] *Id.*
[24] Dkt. No. 11-33.
[25] Dkt. No. 15-1.
[26] Dkt. No. 11-34.
[27] Dkt. No. 11-37.

agencies,[28] which are procedural requirements for filing suit. Plaintiff filed her original petition in state court on July 28, 2021, alleging age discrimination, disability discrimination, and retaliation for her exercise of FMLA leave.[29] She seeks reinstatement, backpay, and other damages.[30] Plaintiff's first amended petition recasts her first two claims as federal statutory claims: violations of the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA).[31] Defendant removed to this Court on September 24, 2021, pursuant to 28 U.S.C. § 1441.[32]

## II.   SUMMARY JUDGMENT LEGAL STANDARD

Under Rule 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[34] The burden then shifts to the non-movant to demonstrate the existence of a genuine issue of material fact.[35] "A fact is 'material' if its resolution could affect the outcome of the action,"[36] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[37] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[38]

---

[28] Dkt. Nos. 1-2 at 3, ¶ 10; 1-5 at 3, ¶ 11.
[29] Dkt. No. 1-2.
[30] *Id.* at 7-8, ¶¶ 30-32.
[31] Dkt. No. 1-5 at 5-6, ¶¶ 17-25.
[32] Dkt. No. 1.
[33] Fed. R. Civ. P. 56(a).
[34] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[35] *See id.*
[36] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[37] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[38] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[39] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[40] Parties may cite to any part of the record, or bring evidence in the motion and response.[41] By either method, parties need not proffer evidence in a form admissible at trial,[42] but must proffer evidence substantively admissible at trial.[43]

### III.     ANALYSIS

#### A.  Retaliation under the FMLA

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee."[44] The provisions of the FMLA create a prescriptive right or entitlement, allowing an eligible employee to take this leave without interference by an employer.[45] The FLMA also creates proscriptive rights which protect an eligible employee from discrimination or retaliation for exercising her FMLA rights.[46] Claims for violation of this proscriptive provision are generally cast as retaliation claims. Courts often fail to distinguish between interference claims and retaliation claims, and so do plaintiffs.[47] Here, Plaintiff claims she was retaliated against for the "exercise of her rights under FMLA."[48]

---

[39] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[40] *See* Fed. R. Civ. P. 56(e).
[41] *See* Fed. R. Civ. P. 56(c).
[42] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[43] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[44] 29 U.S.C. § 2612(a)(1)(D).
[45] *Elsensohn v. St Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (citing 29 U.S.C. § 2615(a)(1)).
[46] *Id.* (citing 29 U.S.C. § 2615(a)(2)).
[47] *See, e.g., Caldwell v. KHOU-TV*, 850 F.3d 237, 245-46 (5th Cir. 2017).
[48] Dkt. No. 1-5 at 6, ¶ 29.

"A *prima facie* showing of FMLA retaliation requires that a plaintiff show: (1) [s]he was protected under the FMLA; (2) [s]he suffered an adverse employment action; and (3) [s]he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA."[49] The third element requires proof of a causal link.[50] Under *McDonnell Douglas*, if the plaintiff can make this *prima facie* showing by circumstantial evidence, then the burden shifts to the defendant to present legitimate, non-discriminatory reasons for the adverse action.[51] If defendant meets that burden, then the plaintiff has the burden to show that it is a mere pretext.[52]

Here, there are serious questions about whether Plaintiff's absence for bariatric surgery was protected by the FMLA because she blatantly disregarded the statutory notice requirements.[53] Furthermore, while she was entitled to leave when she filed her application, she knew or should have known that she did not have anywhere near enough leave to suffice for a reasonable recovery period after surgery.

But even assuming *arguendo* that Plaintiff is protected and thus made out a *prima facie* case, her claim ultimately fails. Defendant can show a legitimate, non-discriminatory reason to terminate her employment: Plaintiff's absenteeism. It is well established in the Fifth Circuit that "an employee's failure to show up for work is a legitimate reason for firing her,"[54] and this Court's review of the facts show that after years of Defendant's flexibility, schedule changes, counseling, explanation of leave requirements, and more, they were not able to bring Plaintiff to a place of

---

[49] *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021) (citing *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006)) (internal quotation marks omitted).
[50] *Acker v. GM, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017).
[51] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[52] *Mauder*, 446 F.3d at 583.
[53] 29 U.S.C.S. § 2612(e)(2).
[54] *Trautman v. Time Warner Cable Tex., L.L.C.*, 756 F. App'x 421, 428 (5th Cir. 2018).

satisfactory dependability. Because of her excessive absenteeism, Plaintiff's employment status in early 2020 was already on the ropes. She had been specifically reprimanded for failing to build up the accruals and for giving inadequate notice before missing a shift, which leaves Defendant in a lurch. Termination for continued failures in this regard is both legitimate and non-discriminatory.

Furthermore, Plaintiff cannot show, by a preponderance of the evidence,[55] that Defendant's reason—excessive absenteeism—is a mere pretext for FMLA retaliation. "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[56] The summary judgment evidence does not evince disparate treatment. In fact, it shows that leave without pay requests are exceptionally rare for similarly situated employees who have worked for the City long enough to have accrued sick leave and vacation.[57] Moreover, for the reasons explained above and in the Court's review of the facts, there is nothing incredible about firing Plaintiff on the basis of her attendance record. The termination letter's temporal proximity to the FMLA request is alone insufficient to create a material issue of pretext.[58]

### B. Retaliation under ADEA

Plaintiff also alleges age discrimination. The elements of an ADEA retaliation claim are: "(1) [the plaintiff] was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either i) replaced by someone outside

---

[55] *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015).

[56] *Trautman*, 756 F App'x at 429 (citing *Delaval v. PTech Drilling Tubulars*, L.L.C., 824 F.3d 476, 480 (5th Cir. 2016)) (internal quotations omitted).

[57] Dkt. No. 43 at 12.

[58] *Sanchez v. United States Postal Serv.*, 430 F. App'x 368, 371 (5th Cir. 2011) (quoting *Strong v. Univ. Healthcare Sys., LLC.*, 482 F.3d 802, 808 (5th Cir. 2007)) ("Sanchez admits he had 'absenteeism issues' and only submitted documentation for less than half of his absences. He argues instead, that the temporal proximity between his firing and his EEO complaint supports his claim. That is not sufficient to create a material issue of pretext. As this court has held, 'temporal proximity alone is insufficient to prove but for causation.'").

the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age."[59] As above, if the plaintiff establishes her *prima facie* case, then the defendant must provide a legitimate, non-discriminatory reason for the adverse action.[60] If the defendant meets its burden, then the burden shifts to the plaintiff to show "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)."[61]

To make out her *prima facie* case, Plaintiff provides an affidavit stating that she was ultimately[62] replaced by a younger employee, Joana Alvarez.[63] Defendant moves to strike the affidavit under the sham evidence rule,[64] but that analysis is unnecessary because even if Plaintiff meets the *prima facie* elements, her claim would ultimately fail because Defendant can show a legitimate, non-discriminatory reason to terminate her employment. For the same reasons that Plaintiff's excessive absenteeism was not a mere pretext to fire her for taking FMLA leave, the Court finds that Plaintiff's attendance is not a mere pretext to fire her on the basis of age. Even under a mixed-motive analysis, there is no summary judgment evidence that age was in the mix. Plaintiff provides no direct evidence of age discrimination, and circumstantial evidence (that she was over 40 and was fired) is unavailing since Plaintiff's poor attendance record alone tells a coherent story of why she was fired.

---

[59] *Flores v. Select Energy Servs., L.L.C.*, 486 F. App'x 429, 432 (5th Cir. 2012) (citing *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

[60] *Berquist v. Wash. Mut. Bank*, 492 F.3d 576, 587 (5th Cir. 2007).

[61] *Id.* (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004)).

[62] Presumably after Defendant's hiring freeze was over. *See* Dkt. No. 11-41.

[63] Dkt. No. 15-1 at 3.

[64] Dkt. No. 17 at 4.

### C.  Retaliation under ADA

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."[65] To establish a *prima facie* case of intentional discrimination pursuant to the ADA, a plaintiff must show that she: (1) was disabled; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees.[66] When Plaintiff uses indirect evidence, the familiar *McDonnell Douglas* burden shifting applies.[67]

At a certain point, a poor attendance record brings the "qualification" element into dispute since "excessive absences, even if related to a disability, are not protected activity under the ADA because they render the plaintiff to be 'not otherwise qualified' to perform her job functions."[68] But as above, even assuming *arguendo* that Plaintiff could make out a *prima facie* case on the basis of her lupus diagnosis, her excessive absenteeism is a legitimate, non-discriminatory, and non-pretextual reason for her firing.[69] The summary judgment evidence shows that Defendant has been sufficiently flexible and accommodating with respect to the various absences that may be required to treat a chronic disease like lupus. But ultimately, Plaintiff's attendance became so unreliable that Defendant had a wholly non-discriminatory reason to terminate her employment.

---

[65] 42 U.S.C. § 12112(a).

[66] *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 396 (5th Cir. 1995).

[67] *Id.* at 394.

[68] *Shores v. United Cont'l Holdings, Inc.*, No. H-13-2745, 2016 U.S. Dist. LEXIS 132429, at *33 (S.D. Tex. 2016) (citing *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 726-27 (5th Cir. 1998) and *Rogers. v. Int'l Marine Terminals*, 87 F.3d 755, 759-60 (5th Cir. 1996)).

[69] *See Trautman*, 756 F App'x at 430 (finding excessive absenteeism a non-pretextual reason that defeated both FMLA claims and ADA claims under the same analysis).

**IV.**        **HOLDING**

For the foregoing reasons, the Court finds that there is no genuine dispute as to any material fact in this case and **GRANTS** Defendant's motion for summary judgment. A separate final judgment will issue, pursuant to Rule 54.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day of February 2023.

_____
                Micaela Alvarez
        United States District Judge